**Noah KEITH, Plaintiff-Respondent,**

v.

**Cecil KEITH and Melinda Keith, Defendants-Appellants.**

**No. 11078.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 1980.

John A. Honssinger, Low & Honssinger, Lebanon, Charles E. Knowles, Buffalo, for plaintiff-respondent.

Phillip R. Garrison, Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for defendants-appellants.

MAUS, Judge.

This is an action to partition 159.5 acres, more or less, in Laclede County. The trial court found the plaintiff owned $^{38}/_{42}$ and the defendants owned $^4/_{42}$ undivided interests in the entire tract and ordered partition by sale. A sale was conducted and the report of sale was filed and approved. The defendants' initial point on appeal is that the trial court erred in not determining their interests in the "northern portion" of the property to be $^1/_7$ rather than $^4/_{42}$.

The entire property is described as Lots 9, 10, 11, 14 and 15 in Section 19, Township 35, Range 17, except one acre out of the north part thereof for a graveyard. The terms "northern portion" and "southern portion" result from certain conveyances in the chain of title describing the property conveyed as that portion north of or that portion south of a designated line. The line was described as: "Beginning at the northeast corner of Lot 9 and thence in a southwesterly direction to the northwest corner of Lot 15."

The title of the parties stems from the tenancy in common in equal shares in the entire property of brothers W. M. (William) Keith and J. B. Keith. The plaintiff and one Ray Keith were sons of J. B. Keith. While the extent of the title standing in the name of each decedent is to be determined, it is conceded that the title of the parties is derived in part through intestate succession from J. B. Keith and Ray Keith. J. B. Keith died in 1955 leaving his widow Isabell and four children: daughter, Ora Hildebrand; plaintiff son, Noah Keith; son, Ray Keith and son, Orland Keith. It is likewise conceded that since J. B. Keith died before the effective date of the 1955 Probate Code and widow Isabell Keith was not shown to have made an affirmative election to take a share in fee, her interest by descent terminated on her death and is not a factor to be considered. In the same vein, son Orland Keith died single and without issue. The net result is that the title descending from J. B. Keith vested one-third in Ora Hildebrand, one-third in Ray Keith and one-third in Noah Keith. By conveyance Noah Keith acquired the interest of Ora Hildebrand. Thus, for the purpose of this appeal, whatever title descended from J. B. Keith is vested two-thirds in Noah Keith and one-third in the successors in interest of Ray Keith. Ray Keith died in 1965 survived by his seven children including defendant Cecil Keith. Six of these children, including Cecil Keith, conveyed their interest to their uncle Noah Keith. However, the other child later conveyed his interest to Cecil Keith and Melinda Keith, his wife. The final result is that whatever title descended from Ray Keith is vested $^1/_7$ in defendants and $^6/_7$ in the plaintiff and whatever title descended from J. B. Keith is vested $^2/_{42}$ in defendants ($^1/_7$ of Ray's inherited $^1/_3$) and $^{40}/_{42}$ in plaintiff ($^6/_7$ of Ray's inherited $^1/_3$ plus his inherited $^1/_3$ and Ora Hildebrand's inherited $^1/_3$ acquired by deed).

The following is a summary of deeds of the interests of W. M. Keith and J. B. Keith upon which the resolution of this action is dependent:

| Deed No. | Date of Deed | Date Recorded | Grantors | Property Described | Grantees |
| --- | --- | --- | --- | --- | --- |
| (1) | 11–13–11 | 12–30–11 | W. M. Keith and Nora Keith, his wife | "Our undivided interest in" the entire property | J. B. Keith and Isabell Keith |
| (2) | 11–13–11 | 11–21–11 | J. B. Keith and Isabell Keith, his wife, | "Land lying north of" the line—19–35–17 | W. M. Keith, Nora Keith, his wife |

| Deed No. | Date of Deed | Date Recorded | Grantors | Property Described | Grantees |
|---|---|---|---|---|---|
| (3) | 6–28–19 | 6–28–19 | W. M. Keith, a widower | "All of that part of a tract . . . lying north" of the line; "intending to convey all my int." in the entire property | J. B. Keith and Isabell Keith, his wife |

Each deed was a warranty deed and was acknowledged on the date of the instrument.

Following the death of J. B. Keith, his surviving widow, Isabell, by a deed dated October 25, 1961 (herein called deed no. 4) conveyed all of her right, title and interest in the entire property to Ray Keith. It is interesting to note this deed was not recorded until December 10, 1963.

An analysis of this tangle of deeds, intestate descent and survivorship estates will reveal that the interests as determined by the trial court could have been created by only one chain of title. That is: J. B. Keith died owning an undivided one-half interest in the entire property, thereby the defendants acquiring a $\frac{1}{42}$ interest and the plaintiffs a $\frac{20}{42}$ interest in the entire property; and that J. B. Keith and Isabell Keith, as tenants by the entirety, owned an undivided one-half interest in the entire property and that Isabell Keith by deed no. 4 conveyed this one-half ($\frac{21}{42}$) interest to Ray Keith and following his death the defendants acquired a $\frac{3}{42}$ ($\frac{1}{7}$ of $\frac{21}{42}$) interest and the plaintiff an $\frac{18}{42}$ ($\frac{6}{7}$ of $\frac{21}{42}$) interest in the entire property.

The plaintiff supports such a devolution of title by arguing that because of the priority in recording, deed no. 2 was effective before deed no. 1, thereby causing deed no. 3 to be a nullity. This would result in title to the southern portion being vested one-half in J. B. Keith and one-half in J. B. Keith and Isabell Keith, his wife. However, the northern portion would not be vested in such interests. Deed no. 1 cannot be ignored. If deed no. 2 was effective first, that deed would have caused title to the northern portion to be vested in W. M. Keith and W. M. Keith and Nora Keith, his wife. In turn, their conveyance (deed no. 1) would then vest title to the northern portion in J. B. Keith and Isabell Keith, his wife, which through her conveyance and Ray Keith's death would then be vested $\frac{1}{7}$ in defendants as they contend.

However, this court cannot approve that analysis. A deed is effective upon delivery. *Southern v. Southern*, 52 S.W.2d 868 (Mo. 1932). Upon this record there is a "rebuttable presumption that a deed is delivered on the day of its acknowledgment." *Mitchell v. McClelland*, 306 S.W.2d 75, 79 (Mo.App. 1957). Also see *Breshears v. Breshears*, 360 Mo. 1057, 232 S.W.2d 460 (1950); *Barber Asphalt Paving Co. v. Field*, 174 Mo.App. 11, 161 S.W. 364 (1913). While recordation may also raise, or perhaps add to, a presumption of delivery, a delayed recording does not necessarily defeat a presumption of earlier delivery upon acknowledgment. *Southern v. Southern, supra; Mitchell v. McClelland, supra.* It should be noted that this case does not present a problem of notice of a deed recorded outside the chain of title.

In circumstances such as this case, there are established principles of law to aid in determining priority in the effectiveness of conveyances. These conveyances executed contemporaneously are to be construed together. *Engelhardt v. Gravens*, 281 S.W. 715 (Mo. 1926). Also, "when two or more deeds, conveyances, or contracts of any sort are made simultaneously, and so connected with each other that they may be regarded as one transaction, these contracts and conveyances should be held to take effect in such order of priority and succession as shall best carry into effect the intention and best secure the rights of all the respective parties." *Biddle Avenue Realty Corp. v. Commissioner of Int. Rev.*, 94 F.2d 435, 436 (6th Cir. 1938). Also see 23 Am. Jur.2d Deeds § 283, p. 317; 26 C.J.S. Deeds § 94, p. 853. The intent of the parties concerning the effectiveness of the instruments may also be inferred from their words and acts preceding, attending and

subsequent to the execution of the instruments. 23 Am.Jur.2d Deeds § 109, p. 158. This rule is particularly applicable, almost conclusive in this case. On December 18, 1911, each couple executed a separate deed of trust to the same trustee for the benefit of the same third party. The deed of trust executed by J. B. Keith and Isabell Keith, his wife, conveyed "[a]ll that part Lot 9, 10, 11, 14 and 15 Sec. 19–35–17 that lies south" of the line, "[h]ereby intending to mtg. all my int. in above lots." The deed of trust executed by W. M. Keith and Nora Keith, his wife, conveyed the northern portion and added "hereby int. to mgt. all my int. in above lots." Both deeds of trust were acknowledged before the same notary public and were recorded on December 30, 1911, the date upon which deed no. 1 was recorded. Clearly, W. M. Keith and J. B. Keith demonstrated their intent that deed no. 1 be effective first and that the property formerly owned by them as tenants in common be divided and the northern portion be owned by W. M. Keith and his spouse and the southern portion by J. B. Keith and his spouse. Considering deed no. 1 to have been delivered first and giving full effect to the face of the deeds in question, by reason of deed no. 3 title to the northern portion would have been vested in J. B. Keith and Isabell Keith, his wife, and then by reason of deed no. 4 in Ray Keith. The southern portion would have been vested one-half in J. B. Keith and one-half in J. B. Keith and Isabell Keith, his wife, the latter one-half interest by reason of deed no. 4 ultimately vesting in Ray Keith. Such vesting would have resulted in the defendants owning 1/7 of the northern portion and 4/42 in the southern portion.

■ However, in considering that W. M. Keith and J. B. Keith were dividing the entire property which had been held by them as tenants in common, this court must take notice of and apply a relatively obscure rule of real property. While this, and perhaps other rules of real property, may be viewed as archaic, it is an established rule and the principle of stare decisis is of particular importance in the field of real property. Paraphrasing a quotation, that rule

is: "It is the settled law that if the [husband] is a tenant in common, and there is a voluntary partition of the common estate, a deed, made to the husband and wife, as joint tenants or tenants by the entirety, conveys no estate to the [wife], and invests the entire estate in the [husband], even though the [husband] directed the deed to be made to [his wife and himself] jointly." *Cross v. Huffman*, 280 Mo. 640, 648, 217 S.W. 520, 522 (1919). The rationale is set forth and the cases are collected in Estate by Entireties—Creation, Annot. 132 A.L.R. 637 (1941); 173 A.L.R. 1218 (1948). Also, see *Adams v. Cary*, 226 S.W. 833 (Mo. 1920) where such a deed was made to a tenant in common and her bodily heirs; and see *Powell v. Powell*, 267 Mo. 117, 183 S.W. 625 (1916) where partition deeds were made through a straw party. The doctrine is not unique to Missouri. *Miller v. Miller*, 34 N.C.App. 209, 237 S.E.2d 552 (1977); *Scott v. Moser*, 31 N.C.App. 268, 229 S.E.2d 222 (1976). Applying that rule to the conveyances in question, while deed no. 2 vested title to the northern portion solely in W. M. Keith, his subsequent conveyance, deed no. 3, did vest title in J. B. Keith and Isabell Keith, his wife, as tenants by the entirety, and deed no. 4 conveyed the entire northern portion to Ray Keith. However, under that rule, deed no. 2 resulted in title to the southern portion being vested solely in J. B. Keith. Therefore, it is the conclusion of this court that title to the northern portion is vested 1/7 in the defendants and 6/7 in the plaintiff; and that title to the southern portion is vested 2/42 in the defendants and 40/42 in the plaintiff.

■ The plaintiff argues that even if the trial court erred in determining the interests of the parties, the property should not be resold. To support this proposition he cites the fact the defendant did not appeal from the interlocutory decree determining those interests. It is true the defendant could have appealed from that interlocutory decree. § 512.020 RSMo, V.A. M.S. In retrospect it would have been better had he done so. But, the statute that creates that right of appeal from the inter-

locutory decree expressly provides "but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case." § 512.020. The defendant is entitled to a review of the interlocutory decree as well as the final judgment approving the sale and directing distribution of the proceeds. *State ex rel. Carson v. Lamb*, 232 S.W. 983 (Mo. banc 1921); *Carson v. Hecke*, 282 Mo. 580, 222 S.W. 850 (1920); *Davidson v. I. M. Davidson Real Estate & Investment Co.*, 249 Mo. 474, 155 S.W. 1 (1913); *Aull v. Day*, 133 Mo. 337, 34 S.W. 578 (1896).

As an alternative the plaintiff suggests that it would be a simple matter for the court to recalculate the interests of the parties and redistribute the proceeds. The record establishes the property in question is on the Niangua River and contains 25 to 30 acres of bottom land, 25 acres of bench land, and approximately 100 acres of hill land. The record is barren of information concerning what type land comprises each portion. However, each portion is unique. There is no factual or legal basis upon which a sale price can be established for each portion.

"Two or more parcels of land may be the subject of a single proceeding for partition even though the interest of each cotenant is not the same in each parcel, and although the parcels are situated in different counties." 59 Am.Jur.2d Partition § 38, p. 802.[1] However, V.A.M.R. Civil Rule 96.39 provides "[i]f the premises consist of distinct buildings, farms, tracts or lots of land, they *shall* be sold separately; or, when any tract of land or lot can be divided for the purpose of sale, with advantage to the parties interested, it *may* be so divided and sold in parcels." (emphasis added) Parcels of real property owned in different proportions must be regarded as "distinct tracts" within the meaning of this rule. They have been so regarded by the owners. If the parcels are not so treated, there is no practical method and no method authorized by statute or rule for determining the highest bid, or sale price, for each parcel which is essential to a distribution of the proceeds to the parties "according to their respective rights" as provided in Rule 96.44.[2] If the parties believe a better price could be obtained for the two tracts as a whole, they may agree upon a different procedure. An alternative would be to first offer the tracts separately and then as a whole; if the price as a whole is higher than the total of the separate bids, that price may be allocated to the separate tracts in the proportions of the separate bids.[3]

Without citation the plaintiff declares there is no authority for an order for the resale of the property. Perhaps the plaintiff seeks to invoke a rule that has been declared applicable to uphold judicial sales. That rule has been summarized: "The generally recognized rule is that where a sale is made, pursuant to an order or decree directing a judicial sale, between the making of such a decree and its reversal on other than jurisdictional grounds, such reversal does not vitiate the sale or divest the title acquired by a purchaser in good faith who is a stranger to the proceeding, whether the purchase is made before the appeal is taken, or pending appeal where there is no stay of proceedings." 47 Am.Jur.2d Judicial Sales § 53, p. 340. While there is a distinction between sales pursuant to a decree directing a sale and execution sales, a corollary or restatement of the rule is often applied in upholding an execution sale pending an appeal without supersedeas from the underlying judgment, which is eventually reversed

---

1. Concerning the rule that the parties must be interested in all the tracts and the exception thereto see *Young v. Young*, 307 Mo. 218, 270 S.W. 653 (1925).

2. In *Gebauer v. Gebauer*, 165 S.W.2d 333 (Mo. App. 1942) where the trial court determined that a tract should be divided into lots, an order directing the sheriff to first offer those lots for sale separately and then the tract as a whole, and to consummate the sale in the manner that brought the highest price was approved.

3. This procedure was approved in *Jones v. Hayton*, 329 P.2d 1056 (Okl. 1958).

on appeal. Annot., 29 A.L.R. 1072 (1924). The rule has been applied in other jurisdictions in many types of sales, including partition sales. Annot., Purchase Pending Appeal Without Stay, 155 A.L.R. 1252 (1945). However, the rule to some extent conflicts with the doctrine that a purchaser pendente lite takes subject to the final determination of the litigation and it is not consistently applied. 51 Am.Jur.2d Lis Pendens § 15, p. 962.

The corollary rule has been applied in Missouri in favor of a purchaser at an execution sale, *Vogler v. Montgomery*, 54 Mo. 577 (1874); a purchaser under a special execution, *Shields v. Powers*, 29 Mo. 315 (1860); and a purchaser under a general execution, *Sidwell v. Kaster*, 289 Mo. 174, 232 S.W. 1005 (1921). The rule was stated and the cases reviewed in *Colbern v. Yantis*, 176 Mo. 670, 75 S.W. 653 (1903). The corollary rule has been recognized but held not applicable where the holder of the judgment purchased the property. *Carr v. Carr*, 253 S.W.2d 191 (Mo. 1952); *Gott v. Powell*, 41 Mo. 416 (1867); *Wood v. Ogden*, 124 Mo.App. 42, 101 S.W. 615 (1907); although it has been applied in favor of a bona fide purchaser from the holder of the judgment, *Vogler v. Montgomery, supra.*

The status of the title of one who purchases from a party while litigation involving the property is pending or is subject to review on appeal or is pending on appeal should be distinguished. However, the rationale of the rule has been held applicable to uphold the title of a purchaser from a party even though the quiet title decree in favor of that party was later reversed on a writ of error. *Macklin v. Allenberg*, 100 Mo. 337, 13 S.W. 350 (1890). However, the rationale is generally held not to apply to such purchasers pendente lite. *Missouri State Life Ins. Co. v. Russ*, 214 S.W. 860 (Mo. 1919); *Turner v. Edmonston*, 210 Mo. 411, 109 S.W. 33 (1908); *Tice v. Hamilton*, 188 Mo. 298, 87 S.W. 497 (1905); *Bailey v. Winn*, 113 Mo. 155, 20 S.W. 21 (1892); *Carr v. Cates*, 96 Mo. 271, 9 S.W. 659 (1888). In the application of the general doctrine it has been noted that the review in question was had by writ of error which was regarded as a new action, rather than by appeal. *Sidwell v. Koster*, supra; *Macklin v. Allenberg*, supra. The general doctrine has been held not to be applicable where a purchaser took title by a special warranty deed, rather than a general warranty deed, from a tax sale purchaser in whom title had been quieted when that quiet title decree was reversed upon a writ of error sued out after the purchase. *McAboy v. Packer*, 353 Mo. 1219, 187 S.W.2d 207 (1945).

Also to be distinguished is the effect of review of a default judgment based on constructive service as authorized by Rule 74.12. Rule 74.19 expressly provides no sale pursuant to such a judgment shall be affected upon such review by the setting aside of such a judgment if the property is in the hands of an innocent purchaser. See *Lindell Real Estate Co. v. Lindell*, 142 Mo. 61, 43 S.W. 368 (1897); *Rogers v. Dent*, 292 Mo. 576, 239 S.W. 1074 (1922). Also to be distinguished is a collateral attack upon a judgment, *Phelps v. Domville*, 303 S.W.2d 601 (Mo. banc 1957); *Hope v. Blair*, 105 Mo. 85, 16 S.W. 595 (1891); and a review in a separate direct action where the rights of a bona fide purchaser have intervened, *Jones v. Cook*, 354 Mo. 1130, 193 S.W.2d 494 (1946); *Abington v. O'Dell*, 197 S.W. 339 (Mo. 1917); *Abington v. Townsend*, 271 Mo. 602, 197 S.W. 253 (1917).

Research has revealed no case in this state in which the rule has been applied to a sale upon an interlocutory judgment in partition. Where a sale was conducted after appeal from the interlocutory order, but before the appellate decision of affirmance, the sale has been held valid. *George v. Waller*, 19 S.W.2d 284 (Mo. 1929). When a judgment in partition was attacked in a separate action for fraud, it was declared that the title of a purchaser "could not be impaired by a subsequent modification or annulment of that judgment in an action to which he was not a party. He is in the same position as a purchaser under a judgment which afterwards is reversed on appeal or set aside on motion." *Abington v. Townsend, supra*, 197 S.W. at 255. However, the power of the court upon reversal

of a judgment in partition to order a resale has been recognized in *Carson v. Hecke, supra,* 222 S.W. 850. The rule was not applied where a party to the action purchased the property and gave a deed of trust after the judgment had been reversed by the Supreme Court, even though the lender had no notice of the reversal. *Real Estate Savings Inst. v. Collonious,* 63 Mo. 290 (1876). In *Goode v. Lewis,* 118 Mo. 357, 24 S.W. 61 (1893), on appeal it was determined the trial court had erroneously declared the interests of the parties and, without discussion of the rule, a resale was ordered.

While the rule must be noticed, the extent to which that rule is applicable to partition sales in this state need not be decided in this case. The rule does not apply where there has been error in the conduct of the sale. *Workman v. Anderson,* 297 S.W.2d 519 (Mo. 1957); *Queen City Inv. Co. v. Kreider,* 31 S.W.2d 1002 (Mo. 1930); *McKee v. Logan,* 82 Mo. 524 (1884). Rule 96.39 does require separate sales of "distinct tracts". As the rule declares, there *shall* be separate sales of distinct tracts and that when a tract can be divided advantageously "it *may*" be divided and sold in parcels, it appears that the use of the term "shall" is mandatory. Perhaps not every erroneous determination of interests nor every deviation from Rule 96.39 will require a resale. However, that result must be reached when the rights of a party have been prejudiced. In a similar situation it has been said: "We believe, however, the decree directing a combined sale of both tracts does not sufficiently protect the respective parties to each proceeding as they are not the same nor are their interests the same." *Barnes v. Swedish American Nat. Bank of Rockford,* 371 Ill. 20, 19 N.E.2d 929 (1939). Under the unfortunate and inadvertent circumstances of this case, this court has no alternative but to reach the same conclusion. The judgment approving the sale and directing distribution and the decree determining the interests of the parties and ordering a sale, are set aside and the cause is remanded for further proceedings not inconsistent with this opinion.

BILLINGS, P. J., and HOGAN, J., concur.