incidental papers have been tendered to him.

### C.

H_____, Respondent,

v.

H_____, Appellant.

No. WD 33015.

Missouri Court of Appeals, Western District.

July 27, 1982.

Willard B. Bunch, John Edward Cash, Kansas City, for appellant.

Thomas E. Allen, Hale, Kincaid, Waters & Allen, P. C., Liberty, for respondent.

Before SOMERVILLE, C. J., and WASSERSTROM and NUGENT, JJ.

WASSERSTROM, Judge.

The parties were divorced in December 1979. Pursuant to their joint recommendation, the court awarded custody of their daughter, A, to the father and custody of their son, D, to the mother. In February 1980, the father filed a motion to modify the divorce decree by changing the custody of their son to him. After an evidentiary hearing, the court entered its order so transferring custody, subject to visitation rights to the mother.

The mother appeals on the ground that the judgment of the trial court was against the great weight of the evidence.

In January 1980 the wife assumed physical custody of her son and took him to live in the home of a male friend, H, with whom she was living at the time. The father testified that during this time, she was trying to keep her living arrangement a secret from him and this resulted in interference with his decretal rights. Upon learning that the mother and D were living with H, the father filed the present motion to modify the divorce decree. Subsequently, on March 31, 1980, the mother married H.

The divorce decree granted each parent reasonable rights of visitation and in addition one weekend of each month to be mutually selected by the parties. The father testified that he was allowed to see his son only one time per month, and often these visits lasted only from Saturday morning till early Sunday evening. The wife denied that the father's visitation was so restricted. The father also testified that he could not see D at school without the mother's consent; that D was not allowed to attend the birthday party of his new wife's twin daughters; that he was not allowed to pick D up at the mother's home; he was directed not to attend a cub scout pack roundup or the mother would take D and leave; he was repeatedly frustrated in his attempts to reach D by telephone, and had great difficulty setting up visitation with D at all.

In order to determine the significance of D's habit of pulling his hair out of his head, the father, without the consent of the mother, took D to Drs. Stanley and Boraks of The Family and Child Psychiatric Clinic. After the mother learned of these visits, and after receiving the doctors' written report recommending psychiatric treatment, D was taken by the mother to see a psychologist, Dr. Welch.

Although all of the doctors agree that D is a basically pleasant, bright and personable young man, they did not agree on the

extent of his emotional disturbance. Drs. Stanley and Boraks testified that D is filled with a great deal of anxiety and anger which is focused primarily on his mother. They also testified that the most likely reason for D's symptoms of insecurity and anxiety was the failure to establish a trusting confidential relationship with the primary caretaker (his mother) at year one or two, and that these symptoms could not have been caused by the present tug of war between the parents. The doctors recommended that the custody of D be given to his father and that he receive immediate psychiatric care in order that he not develop more serious neurotic problems as an adolescent and adult. Dr. Welch testified that there was no such deep seated anger or anxiety in D. In his opinion, D is basically a normal boy with the normal problems of being a 9 year old who is going through these custody proceedings. He saw no reason to change custody to the father, but testified that after these proceedings were over counseling would be a good idea.

▮▮ The judgment of a trial court ordering the change in custody of a minor child will be affirmed unless there is no substantial evidence to support it, was against the weight of the evidence, or the judgment erroneously applied or declared the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court is in a better position to judge the credibility of witnesses, their sincerity, character, and other trial intangibles that are not revealed in the trial record and therefore the appellate court should not set aside a judgment on the grounds that it is "against the weight of the evidence" unless the court has a firm belief that the decree or judgment is wrong. *Id.*

▮▮ The evidence outlined above justified the trial court in finding that there was a sufficient change of condition as to warrant a modification of the custody provision. The court could reasonably find, as it did, that the wife interfered with the efforts made by the father to exercise his visitation rights as provided by the custody decree. In Missouri, the rule of law is that interference by a parent with decretal rights of visitation is a factor that may be considered in determining the welfare of a child, and such interference is sufficient to constitute a changed condition which may justify and require a modification. *R. L. S. v. J. E. S.*, 522 S.W.2d 5 (Mo.App.1975); *P___ D___ v. C___ S___*, 394 S.W.2d 437 (Mo.App.1965) and cases cited therein.

▮▮ It is also proper for the trial court to consider the morals and mode of life of the parties in a custody proceeding. *In re Marriage of F___*, 602 S.W.2d 227 (Mo. App.1980). The mother admitted that after getting physical custody of D in January 1980, they went to live in the home of H. D was aware that his mother and H shared the same bedroom at a time when they were not man and wife. Although it is generally true that it is only in those cases where the moral conduct of the offending spouse is such as to directly affect the physical, mental, economic or social well-being of a child that a change in custody is warranted, *In re Marriage of F___, supra,* there was sufficient evidence before the trial court here to support it making such an inference.

▮▮ It is always the best interest of the child that is paramount in a custody proceeding, and it could be reasonably found in this case that D was experiencing emotional turmoil. This was evidenced by his literally pulling his hair out of his head. As to the underlying cause and extent of this emotional turmoil, the doctors were not in agreement. It was the testimony of Drs. Stanley and Boraks that D has deep rooted anxiety and anger, primarily focused at his mother and that his custody should be changed to his father. On the other hand, Dr. Welch testified that D is a normal boy, who is simply experiencing the normal problems that accompany such a custody dispute. It was his opinion that custody should remain with the mother. Such conflicts in testimony should be resolved by the trial court and not be subject to appellate "second guessing." *Galeener v. Black*, 606 S.W.2d 245, 248 (Mo.App.1980).

A review of the evidence does not produce a firm belief that the trial court here reached a wrong result. The judgment therefore must be affirmed. *Murphy v. Carron, supra.*

All concur.